UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
IN RE:

    GLEN E. BRICKEY                              CASE NO. 06-31699
    MARY I. BRICKEY                             (Previous Case No. 06-62746)
                                                               Chapter 13
                                  Debtors
--------------------------------------------------------
APPEARANCES:

| | |
|---|---|
| MARK W. SWIMELAR, ESQ. | LYNN HARPER WILSON, ESQ. |
| Chapter 13 Trustee | Of Counsel |
| 250 South Clinton Street, Suite 203 | |
| Syracuse, New York 13202 | |
| | |
| BOYE & ANDERSON, P.C. | STACY L. TAMBURRINO, ESQ. |
| Attorneys for Debtor | Of Counsel |
| 144 Genesee Street, Suite 407 | |
| Auburn, New York 13202-3511 | |
| | |
| THE CROSSMORE LAW OFFICE | EDWARD Y. CROSSMORE, ESQ. |
| Attorneys for CFCU Community Credit Union | Of Counsel |
| 115 West Green Street | |
| Ithaca, New York 14850 | |

Hon. Stephen D. Gerling, Chief U.S. Bankruptcy Judge

**MEMORANDUM-DECISION, FINDINGS OF FACT,
CONCLUSIONS OF LAW AND ORDER**

Under consideration by the Court is a motion (the "Motion") filed by Mark W. Swimelar, Esq. ("Trustee") and Glen E. and Mary I. Brickey ("Debtors") (collectively, the "Movants") on December 21, 2006, pursuant to § 521(i)(4) of the United States Bankruptcy Code, 11 U.S.C. § 101-1330 ("Code"). Opposition to the Motion was filed on behalf of CFCU Community Credit Union ("CFCU") on January 4, 2006. The Movants filed a reply on January 4, 2007, to which CFCU filed a reply on January 8, 2007.

2

The Court heard the Motion at its regular motion term at Syracuse, New York, on January 23, 2007. At the hearing, the Court indicated that it would reserve on its decision. On January 26, 2007, CFCU requested the opportunity to submit further memorandum of law in support of its position. In response, the Court agreed to a submission date of February 6, 2007.

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1) and (b)(2)(A) and (O).

## FACTS

The Debtors filed a voluntary petition pursuant to chapter 13 of the Code on October 30, 2006. Along with their petition, the Debtors filed their chapter 13 plan, which provides for a dividend of 84% to unsecured creditors. Also filed on October 30, 2006, were payment advice statements for Mary Brickey for April - September 2006. No payment advice statements were filed for the period of employment between September 21, 2006 and October 30, 2006 (actual pay dates of October 5, 2006 and October 19, 2006), despite the fact that she was and is employed[1] as the Director of Environmental Services at the Cayuga Medical

---

[1] According to Debtors' counsel, Mrs. Brickey is eligible to retire in February 2007 but has elected to continue to work in order to pay their creditors over a period of 60 months.

3

Center, Ithaca, New York. No deficiency notices were sent to the Debtors by the Clerk's office, and no request for the two missing payment advice statements was made by the Trustee at the meeting of creditors held on December 4, 2006.[2]

According to the "Payment Advice Certification," attached to the payment advice statements, Mr. Brickey retired as of October 1, 2006. The payment advice statements for Mr. Brickey covered the period from to April 5, 2006 through June 14, 2006, after which it appears that he was receiving disability payments beginning June 12, 2006 through September 24, 2006. According to a "Notice of Award" from the Social Security Administration, Mr. Brickey was entitled to receive retirement benefits beginning August 2006.

By letter dated December 19, 2006, which was electronically filed on December 20, 2006, CFCU's counsel requested that the Court issue an Order pursuant to Code § 521(i)(2) confirming that the Debtors' case had been automatically dismissed on December 15, 2006. Debtors' counsel responded in a letter addressed to the Court, electronically filed and dated December 20, 2006, acknowledging that the two payment advice statements had inadvertently not been filed, but that they did not vary in amount from those which had been filed for the prior six months.

In their schedules, filed along with their petition, the Debtors listed a joint debt owed to CFCU of $5,633.97 on a credit card account. *See* Schedule F. On December 26, 2006, a week after the request made on behalf of CFCU, it filed a proof of claim in the amount of

---

[2] It appears that Debtors' counsel confused the period for calculating current monthly income ("CMI") with the requirement to file payment advices for the 60 day period prepetition as required by Code § 521(a)(1)(B)(iv).

 4

$5,633.97 based on a VISA Credit Card Agreement in the names of both Debtors (Claim No. 8-1).

In the interim, on December 21, 2006, the missing payment advice statements were filed by the Debtors (Docket No. 13). Also on December 21, 2006, the Debtors joined the Trustee in filing the Motion now under consideration.

## DISCUSSION

A recent article considers a number of issues arising from what the author describes as a "clumsily drafted" provision of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") which, in his view, "fails to consider how various sections in Title 11 were intended to work in concert." *See* Neil M. Berman, "Without Thought or Conscious Intention": An Analysis of the Dismissal Standards of 11 U.S.C. § 521(i), 2006 No. 05 NORTON BANKR. L. ADVISER 3 (May 2006). In this discussion of Code § 521(i), the author raises the question:

> What if the trustee and the debtor file a joint motion stating that payment advices have been provided on the 50th day and move the court to order otherwise? Could the court find the debtor in compliance with § 521(a)(1)? If not, how is such an order to be distinguished from nunc pro tunc orders entered on motions to retain counsel or motions to retroactively annul the automatic stay?

*Id.*

In the case pending before this Court, the payment advice statements for Mrs. Brickey were actually filed on the 51st day following the filing of the Debtors' petition. The Movants

point out that their Motion, pursuant to Code § 521(i)(4), was filed the day after CFCU's request was filed and within the five day period set forth in Code § 521(i)(2), which requires that the Court enter an order of dismissal not later than five days after such request if the Court determines that the Debtors failed to comply with Code §521(a)(1) within the 45 day postpetition period. Code § 521(i)(2) is expressly "subject to" paragraph (4) of the section, which allows the Trustee to file a motion before the expiration of the time periods in paragraphs (1), (2) or (3).

As an initial matter, the Court notes that Mr. Brickey timely provided evidence indicating that he received disability payments through September 24, 2006, and was entitled to receive retirement benefits from Social Security beginning in August 2006. There were no additional payment advice statements filed with respect to Mr. Brickey on December 21, 2006, that would suggest his noncompliance with the statute. The Court concludes that there is no basis to dismiss his case, which remains under the jurisdiction of the Court. *See In re Cloud*, Case No. 06-10507, 2006 WL 3438600 (Bankr. N.D. Okla. Nov. 29, 2006); *In re Fawson*, 338 B.R. 505, 515 (Bankr. D. Utah 2006).

There remains for consideration the status of the case as to Mrs. Brickey. The Court has reviewed the cases published to date which have addressed a debtor's failure to timely file payment advice statements, including the two cases referenced above. *See, e.g., In re Calhoun*, Case No. 06-40512-293, 2007 WL 117725 (Bankr. E.D. Mo. Jan. 17, 2007); *In re Luders*, Case No. 06-50287-13, 2006 WL 3487980 (Bankr. W.D.Va. 2006); *In re Conner*, Case No. 06-40061, 2006 WL 1548620 (Bankr. N.D. Fla. May 16, 2006); *In re Smith*, 352 B.R. 729 (Bankr. W.D.N.Y. 2006); *In re Parker*, 351 B.R. 790 (Bankr. N.D. Ga. 2006)*; In re*

*Jackson*, 348 B.R. 487 (Bankr. S.D. Iowa 2006); *In re Wilkinson*, 346 B.R. 539 (Bankr. D. Utah 2006) and *In re Ott*, 343 B.R. 264 (Bankr. D. Co. 2006). Of particular relevance to the matter herein are the cases of *Luders, Wilkinson and Jackson*.

In *Luders* one payment advice was missing for Mr. Luders and two for Mrs. Luders. However, the payment advices that were submitted to the trustee[3] contained year-to-date information which included their total earnings over the 60 day prepetition period. The Court concluded that the year-to-date totals constituted "other evidence of payment" as required by Code § 521(a)(1)(B)(iv) and declined to dismiss the case. *Luders*, 2006 WL 3487980, at *2. In the matter presently under consideration, the payment advice statements timely filed by Mrs. Brickey unfortunately do not contain year-to-date totals covering the entire 60 day prepetition period.

*Wilkinson* involved a chapter 13 debtor who mistakenly submitted a payment advice for the period from January 9 to January 22, 2005. *See Wilkinson*, 346 B.R. at 540. However, she filed her petition on February 21, 2006. The payment advice for the period from January 8 to January 21, 2006 was missing. The court, in preparation for the confirmation hearing, discovered that the payment advice was missing. *Id.* The debtor filed a copy of the missing payment advice immediately prior to the confirmation hearing, which was scheduled for May 18, 2006, some three months postpetition. The chapter 13 trustee never presented the case to the court for "confirmation without objection" pursuant to its local rules because the trustee also discovered the missing payment advice. *Id.* at 541. At the hearing on confirmation, the

---

[3] In the Western District of Virginia, debtors are not required to file the payment advices with the Court. Instead, they are required to submit them to the trustee.

trustee indicated that she would not be filing a request for dismissal of the case pursuant to Code § 521(i)(2). No other party in interest had made such a request either. *Id.* Nonetheless, the court, relying on its prior decision in *Fawson*, found that the case had automatically been dismissed on the 46th day postpetition and that it was without authority to vacate the dismissal of the case pursuant to Rule 60(b) of the Federal Rules of Civil Procedure on the basis of excusable neglect. *Id.* at 546. In so holding, the court stated that "[f]or better or worse, a harsh result is not the same as an absurd result, and it is not absurd to think that Congress intended harsh results when the dictates of the BAPCPA are not followed." *Id.*

The court in *Wilkinson* had not been asked to consider a request made pursuant to Code § 521(i)(2) or a motion pursuant to Code § 521(i)(4). It did, however, address what it viewed as an absurd argument being made by the debtor, which would have allowed the case to languish on the court's docket until such time as a person in interest requested a dismissal order pursuant to Code § 521(i)(2). *Id.* at 543. It pointed out that "if the trustee fails to timely move under § 521(i)(4) once a § 521(i)(2) request is made, or if the Court is unable to make the findings required by § 521(i)(4), then everyone has been operating in a case that was dismissed 46 days after the petition was filed." *Id.* In the matter under consideration, the Trustee has not failed to timely move for a denial of the dismissal of the case.

The facts in *Jackson* are perhaps most comparable to those now under consideration by this Court, with the exception that the debtors in *Jackson* had filed a chapter 7 petition, rather than a chapter 13. At the time of the commencement of the case, the debtors had not filed the required payment advices. However, on the 45th day postpetition, they did file them but they failed to include the payment advices dated March 24, 2006, covering the pay period

beginning on March 5, 2006 and ending on March 18, 2006, and April 7, 2006, covering the pay period beginning on March 19, 2006 and ending on April 1, 2006. *Jackson*, 348 B.R. at 489. As was its practice at the time, upon being notified by the Clerk of the Court's attorney for court services of the deficiency, the court reviewed the filings in the case and entered an order that the case be deemed dismissed. A Notice of Dismissal was served on the debtors and all creditors pursuant to Rule 2002(f) of the Federal Rules of Bankruptcy Procedure. In response to the Notice of Dismissal, the debtors filed the missing payment advices a week later and three days later filed a motion seeking relief from the order of dismissal. *Id.* at 490. The court ultimately concluded that

> its sua sponte dismissals under section 521(i)(1) have not been giving proper deference to the current statutory scheme. By not applying its section 105(a) power to 11 U.S.C. section 521(i)(2) and by exercising its right to "order otherwise" under 11 U.S.C. section 521(a)(1)(B), this Court should be able to prevent most abuses of process.

*Id.* at 497.

In its analysis, the court in *Jackson* first noted that "while it may be difficult to grasp a concept that something called an 'automatic dismissal' is not really automatic, the 'subject to' language in section 521(i)(1) has that very effect." *Id.* The court began my noting that "subject to" is best defined as "determined by something else." *Id.* at 497-98, citing Merriam-Webster Online Thesaurus, found at www.m-w.com. The court found that paragraph (1) of Code § 521(i) requires that a party in interest exercise its right under paragraph (2) to request that the court enter an order of dismissal. *Id.* That request is "subject to" paragraph (4) under which the trustee is given the opportunity to file a motion within five days asking that the court decline to dismiss the case. *Id.* It remains for the court to then consider whether the

trustee has established that the debtor has made a good faith effort to comply with Code § 521(a)(1)(B)(iv) and that it would be in the best interests of the creditors to deny dismissal of the case. *Id.* at 499. However, no such motion was pending before the court and no party had filed a request pursuant to Code § 521(i)(2).

Nonetheless, the court in *Jackson* then focused its discussion on its right to "order otherwise" as provided in Code § 521(a)(1)(B). It did not feel it appropriate to "order otherwise" and waive the filing of payment advices as is the practice in other districts.[4] Instead, the court in *Jackson* indicated that it would make a determination on a case-by-case basis whether entering an order of dismissal under Code § 521(i) "would foster rather than prevent an abuse of process in a particular case." *Id.* at 499-500. Ultimately, the court reinstated the debtors' case, vacating its sua sponte order of dismissal.

Code § 105(a) clearly empowers a court to take action to prevent an abuse of process. However, that power has its limitations. As noted by the Court of Appeals for the Second Circuit, it "is the power to exercise equity in carrying out the *provisions* of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise to do the right thing." *In re Smart World Technologies, LLC*, 423 F.3d 166, 184 (2d Cir. 2005); *see also Wilkinson*, 346 B.R. at 545 (indicating that a court "cannot do violence to a specific statutory scheme in the name of equity" under the powers given it pursuant to Code § 105(a)).

---

[4] In various districts across the country, bankruptcy courts, by way of administrative orders, require that payroll information <u>not</u> be filed with the court; instead, the information is to be provided to the trustee, usually within a specified time period prior to the first date set for the meeting of creditors. *See, e.g. Luders*, 2006 WL 3487980, at *1; *In re Barajas*, Case No. 06-10598-B-13, 2006 WL 3254483, *7 (Bankr. E.D.Cal. Nov. 8, 2006); *In re Lovato*, 343 B.R. 268, 269 (Bankr. D.N.M. 2006).

10

Code § 521(i)(1) makes it clear that a case is automatically dismissed if a debtor fails to comply with the requirements of Code § 521(a)(1). The Court cannot agree with the conclusions in *Jackson* that a court may "order otherwise" and decline to dismiss the case pursuant to Code § 105(a) based on a finding of an abuse of process. While this may appear to be the right and equitable approach to take, it appears to overstep the statutory limitations of Code § 521(i). As will be discussed below, the only statutory basis for denying the dismissal of a case, which the Court may consider, is that provided in Code § 521(i)(4), which incorporates reference to Code § 521(1)(B)(iv)'s requirement that evidence of payment from an employer during the 60 days prepetition be filed.

In this case, CFCU did file its request pursuant to Code § 521(i)(2) on the 50th day postpetition. The Movants responded the next day by filing the Motion pursuant to Code § 521(i)(4). Examining the language of Code § 521(i)(4), the Court notes its requirement that the motion of the trustee had to have been filed "before the expiration of the applicable period of time specified in paragraph (1), (2) or (3)." The statute requires that there be a notice and hearing on the trustee's motion before the court "may decline to dismiss the case" based on a finding that "the debtor attempted in good faith to file all the information required by subsection (a)(1)(B)(iv) **and** that the best interests of creditors would be served by administration of the case." 11 U.S.C. § 521(i)(4) (emphasis supplied). It is interesting to note that while Code §§ 521(i)(1-3) apply to an individual debtor's failure to comply with <u>any</u> of the requirements set forth in Code § 521(a)(1), Code § 521(i)(4) only has application in the situation where the debtor has failed to file copies of the payment advices or other evidence of payment received within 60 days before the filing of the petition as required by Code §

521(a)(1)(B)(iv).

With this in mind, it appears that Congress considered it important to allow the trustee an opportunity to file a motion within the "applicable period of time" specified not only in paragraph 1 and paragraph 3, but also specified in paragraph 2, if the contemplated dismissal is based only on the debtor's failure to provide evidence of payment received within 60 days prepetition from an employer. For instance, paragraph 1 provides that the case be automatically dismissed effective on the 46th day postpetition. However, if the trustee files a motion prior to the 46th day, obviously the "automatic" dismissal will not occur unless the trustee's motion is denied after notice and hearing at which the trustee must establish not only good faith on the part of the debtor but also that declining to dismiss the case will be in the best interest of the creditors. So too in the case where the debtor has been granted an extension of the period for the filing of various documents required by Code § 521(a)(1), including payment advices, and fails to do so, the trustee still has an opportunity to file a motion within the extended period granted by the Court requesting that there be no dismissal if it is based merely on the debtor's failure to file evidence of payment from an employer and the trustee is able to establish that there had been a good faith attempt by the debtor to file such evidence and that it would be in the best interests of the creditors to deny dismissal of the case.

Under paragraph 2, a party in interest may request that the Court enter an order dismissing the case as a result of the debtor's failure to comply with the filing requirements of Code § 521(a)(1), and the Court is required to enter such a "comfort" order not later than five days after the request if noncompliance with the filing requirements is found by the Court.

12

However, Code § 521(i)(2) is "subject to" paragraph (4).  Thus, the trustee is expressly given the opportunity to prevent dismissal of the case by filing a motion within the  "applicable period" of five days of said request, provided that the request is based solely on the debtor's failure to comply with Code § 521(a)(1)(B)(iv), <u>and</u> the trustee is able to establish both a good faith effort on the part of the debtor to comply with the statute and that denying the request would be in the best interests of the creditors.  Admittedly, if a party in interest never requests a "comfort" order under Paragraph 2, the five day window is never opened for the trustee to make such a motion.

Congress could have limited the Trustee to the 45 day period of Code § 521(i)(1) or to the 90 day period of Code § 521(i)(3).  Instead, it saw fit to afford the Trustee a "third bite at the apple" in the event that a party in interest requests the Court to enter a comfort order dismissing the case.  Obviously, Congress recognized that it might not be in the best interests of creditors to allow a case to be dismissed as long as the debtor had made a good faith effort to comply with Code § 521(a)(1)(B)(iv).

This Court recognizes the concerns expressed by the court in *Fawson* that

> courts would have cases languishing on their dockets that were 'effectively dismissed' on the 46th day.  But trustees might continue to administer the case because everyone is awaiting a § 521(i)(2) request.  Such an absurd result could not have been what Congress intended.

*Fawson*, 338 B.R. at 511.  The same court continued to hold the same view when it addressed the facts in *Wilkinson*, as discussed previously, in concluding that while a harsh result, dismissal under such circumstances was not an absurd result.

However, there is an argument to be made that it would be just as absurd for a chapter

13

13 case to successfully proceed to confirmation, after which the debtor continued to make payments for several months or years under the terms of the plan, only to have a party in interest later request and be granted dismissal of the case, retroactively to the 46th day of the case, based on the debtor's failure to comply with Code § 521(a)(1)(B)(iv).  Under those circumstances, the chapter 13 trustee should be entitled to file the motion asking that the court deny dismissal of the case pursuant to Code § 521(i)(4).  As suggested by Neil M. Berman, *supra*, it is comparable to a motion filed by a party in interest pursuant to Code § 362(d) asking that the Court retroactively annul the <u>automatic</u> stay.  Code § 521(i)(4) appears to authorize the Court to "annul" the <u>automatic</u> dismissal provided for in Code § 521(i)(1) under very limited circumstances and only when it is the debtor's failure to file evidence of payment received by the debtor from an employer within the 60 day prepetition period that is at issue. Those "limited circumstances" include the requirement that the motion must be made by the trustee; the motion must be made within the applicable period of time specified in paragraph (1), <u>(2)</u> or (3) of Code § 521(i); and that the trustee is able to establish that it would be in the best interest of the creditors not to dismiss the case.

In this case, CFCU's request for an order dismissing the case was based only on the Debtors' failure to comply with Code § 521(a)(1)(B)(iv).  The Motion was timely made by the Movants and the Trustee within the applicable five day period of Code § 521(i)(2). Furthermore, the Court finds that the Trustee has met his burden of establishing not only that the Debtors attempted in good faith to file the payment advice statements required pursuant to Code § 521(a)(1)(B)(iv), but also that the best interests of creditors would be served by allowing the case to go forward.  The Debtors originally filed their payment advice statements,

14

consisting of 32 pages of documents, on October 30, 2006, the same day as they filed their petition. The payment advice statements covered Mrs. Brickey's earnings through September 20, 2006. The Debtors were not served with a deficiency notice by the Clerk's office or notified by the Trustee at the meeting of creditors that the payment advices for the month in which they filed their petition were missing. Once made aware of the fact on or about December 20, 2006, they immediately filed the two missing payment advices on December 21, 2006, covering the pay periods from September 21, 2006 though October 30, 2006. Under those circumstances, the Court concludes that the Trustee has demonstrated that the Debtors attempted in good faith to file evidence of the payments received by Mrs. Brickey within the 60 day prepetition period.

With respect whether the best interests of creditors would be served by allowing administration of the case, the Debtors' plan proposes a dividend of 84%. It has been represented to the Court that the Debtors were making payments under the terms of the plan at the time the Motion was heard. It is clearly in the best interests of the creditors, including CFCU, to be paid 84% of their claims through the Debtors' plan.

15

Based on the foregoing, it is hereby

ORDERED that the Motion by the Trustee, in which the Debtors have joined, asking that the Court decline from dismissing the Debtors' case is granted pursuant to Code § 521(i)(4).

Dated at Utica, New York

this 1st day of March 2007

/s/   Hon. Stephen D. Gerling
STEPHEN D. GERLING
Chief U.S. Bankruptcy Judge